THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED FINANCIAL CASUALTY**<br>**COMPANY** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:13-CV-1291** |
| | : | **(JUDGE MARIANI)** |
| **A.M. SKIER AGENCY INC.,** et al. | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.  Procedural History

On May 9, 2013, Plaintiff, United Financial Casualty Company ("United"), filed a

Complaint (Doc. 1).  On June 25, 2013, Defendants, A.M. Skier Agency, Inc., AMSkier

Partners, Inc. (herein collectively known as "AM Skier"), and Kimberly Latsch, moved to

dismiss (Doc. 9).  The parties have fully briefed the motion, and it is ripe for decision.  For

the reasons set forth below, the Court will grant in part and deny in part Defendants' motion.

Plaintiff is an insurance company located in Ohio (Complaint, Doc. 1 at ¶ 1;

Producer's Agreement, Doc. 1-1 at 7), and Defendants are A.M. Skier Agency, Inc., an

insurance producer, AMSkier Partners, Inc., and Kimberly Latsch, an employee of AM Skier

(Doc. 1 at ¶ 6; Doc. 1-1 at 7).  All Defendants are residents of Pennsylvania (Doc. 1 at ¶¶ 2-

3, 5).

This case is between citizens of Ohio and Pennsylvania and the amount in controversy is $122,500.00. The court therefore has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Factual Allegations

Plaintiff alleges that pursuant to a Producer's Agreement, Defendants AM Skier were authorized to provide insurance products for United Financial Casualty Company (Doc. 1 at ¶ 10). This Agreement prohibited Defendants from "submit[ting] to [Plaintiff] any application for insurance . . . for any class of risk not specified in the Underwriting Requirements" (Id. at ¶ 11). The Underwriting Requirements, which Defendants possessed, delineated "unacceptable risks for hired auto-coverage and employers non-owned liability coverage under a commercial auto policy," including "restaurant/pizza/fast-food delivery" (Id. at ¶ 13).

From a period of on or about May 25, 2007, through May 25, 2011, AM Skier produced, and subsequently annually renewed, a commercial insurance policy to Settlers Inn, Ltd. (Id. at ¶¶14-17). Each annual policy "did not provide hired auto coverage or employer's non-owned liability coverages" (Id.). Plaintiff asserts that Settlers Inn, Ltd. falls within the category of a restaurant/pizza/fast-food delivery business and that Defendant Latsch, wrongfully and without Plaintiff's knowledge, represented to the principals of Settlers Inn, Ltd. that their policy "provided coverage which it did not in fact provide, to wit, hired auto coverage or employer's non-owned liability coverages" (Id. at ¶¶ 18, 24). As evidence,

2

Accord Certificates of insurance demonstrated that the policies purported to provide Settlers Inn, Ltd. with hired auto coverage or employer's non-owned liability coverages (*Id.* at ¶ 25).

On May 11, 2011, Colleen Stevens, a Settlers Inn, Ltd. employee acting within the scope of her employment, was involved in an automobile accident with Joseph D. Hussey in Wayne County, Pennsylvania (*Id.* at ¶¶ 19, 20). While Stevens "had a personal policy with Progressive Advanced Insurance Company with third party liability limits of $25,000.00 at the time" of the accident, Hussey's serious injuries allowed for "excess exposure to Mrs. Stevens based on the limits of her personal policy" (*Id.* at ¶¶ 21, 22). Due to Defendants' representations to Plaintiff that Settlers Inn, Ltd.'s policies contained hired auto coverage or employer's non-owned liability coverages, Plaintiff settled Hussey's claims against Settlers Inn, Ltd. and Stevens for $122,500.00 (*Id.* at ¶ 27). During this time, Plaintiff "incurred attorneys' fees and costs in investigating and settling the Hussey claim in the amount of $21,128.00" (*Id.* at ¶ 28).

In relevant part, the Producer's Agreement between AM Skier and United provides:

> [AK Skier] will indemnify, defend, and hold [United] harmless for and from all Losses that [United] sustain[s] due to [AM Skier's] negligence, any wrongful acts, errors or omissions on [AM Skier's] part, or [AM Skier's] failure to comply with the provisions of this Agreement or [the] Underwriting Requirements.

(Producer's Agreement, Article X(B)). On August 7, 2012, Plaintiff tendered a demand for indemnity under this Agreement provision but Defendants refused to pay Plaintiff (Doc. 1 at ¶¶ 32, 33).

As a result, Plaintiff now brings claims against Defendants for Breach of Contract

(Count I), Equitable Subrogation (Count II), and Fraud (Count III).

### III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements. *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

4

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. Analysis

Defendants moved to dismiss Counts II and III, asserting a failure to meet the pleading standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), and preclusion

5

of the claims under the "gist of the action" doctrine[1] and the Economic Loss Doctrine (Doc. 9 at ¶¶ 5-7).  Since Defendants do not move to dismiss Count I, only Counts II and III will be examined pursuant to Defendants' arguments.

## A. Sufficiency of the Factual Allegations

The court reviewed the allegations of the Complaint under the requirements set forth in *Twombly* and *Iqbal*.  Examining the facts properly pleaded and discounting all legal conclusions, the court has determined that Plaintiff's claims for Equitable Subrogation and Fraud were adequately pleaded to meet the necessary standard.  Therefore, Defendants' motion to dismiss on these grounds will be denied.  However, as will be developed in the remainder of the memorandum, Defendants' motion to dismiss Count III under the "gist of the action" doctrine will be granted.

## B. "Gist of the Action" Doctrine[2]

The "gist of the action" doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims."  *eToll, Inc., v. Elias/Savion Adv., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) ("Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches *of duties imposed by mutual consensus agreements.").

---

[1] Defendants use "gist of the case doctrine" and "gist of the action doctrine" interchangeably.  For the purposes of clarity, and in accordance with the manner in which this doctrine is commonly cited in Pennsylvania and federal court cases, this court will refer to this doctrine as "gist of the action."

[2] The Pennsylvania Supreme Court has neither recognized the "gist of the action" doctrine nor rejected it, but a number of Pennsylvania Superior courts and federal courts have applied it to cases arising under Pennsylvania law.  *See Williams v. Hilton Grp. PLC*, 93 Fed.Appx. 384, 385 (3d Cir. 2004) (predicting that while the Pennsylvania Supreme Court has not expressly adopted the "gist of the action" doctrine, it will adopt the doctrine as applied in Pennsylvania Superior Court cases); *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).

The doctrine bars tort claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Reed v. Dupuis*, 920 A.2d 861, 864 (Pa. Super. Ct. 2007). The court in *eToll* set forth a comprehensive analysis of several state and federal cases regarding the "gist of the action" doctrine.[3]   After reviewing the cases, the court concluded that the cases hinged on how closely connected the alleged fraud was to the performance of contractual obligations. If the tort and contract counts were closely intertwined, "then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties.  If not, then the gist of the action would be the fraud, rather than any contractual relationship between the

---

[3] In *Galdieri v. Monsanto Co.*, 2002 U.S. Dist. Lexis 11391 (E.D. Pa. May 2, 2002), the plaintiffs alleged that their employer fraudulently induced them to stay at their jobs by promising long-term incentive compensation programs "as required by their employment contracts." *Id.* at 34. The defendant did not do so, and the plaintiffs alleged that it had committed fraud because it never intended to create these compensation plans. The court held that the doctrine barred the fraud claims because they were "intertwined" with the breach of contract claims. *Id.* In *Werner Kammann Maschinenfabrik, GmbH, v. Max Levy Autograph, Inc.*, 2002 WL 126634 (E.D. Pa. Jan. 31, 2002), the plaintiff bought a furnace from the defendant, who assured the plaintiff that certain heating elements came with the furnace. However, the furnace lacked the promised components, and the defendant refused to correct its mistake. The plaintiff alleged negligent and intentional misrepresentation in addition to breach of contract claims, but the court dismissed the tort claims because "the duties allegedly breached were created and grounded in the contract itself." *Id.* at 6. In *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826 (E.D. Pa. 2000), the plaintiff purchased defective software from the defendant. Despite the defendant's assurances that it would work, the plaintiff never got the software operational. The plaintiff asserted fraud because the seller "strung along" the buyer with repeated promises the software would work. *Id.* at 833. However, the court found that the contract was not collateral to the fraud claim, but rather "at the heart" of it. *Id.* at 834. In *Factory Mkt. v. Schuller Int'l*, 987 F. Supp. 387 (E.D. Pa. 1997), the defendant agreed to repair plaintiff's leaky roof. However, after the repairs, the roof continued to leak. The court dismissed the plaintiff's tort claims because "without the contract, the plaintiff would have no claim at all." 811 A.2d at 19. Thus, there was no independent duty from which a tort could arise. The *eToll* court did identify one case in which a fraud action was not barred by the doctrine, but the facts of that case are not similar to ours. *Polymer Dynamics, Inc. v. Bayer Corp.*, 2000 WL 1146622 (E.D. Pa. Aug. 14, 2000) (holding that promises of a future business relationship "not contemplated by the sales contracts" would not be barred by the doctrine).

parties." *Id.* at 19.[4]   Relying on these cases, the court determined that the "gist of the action" doctrine barred the tort claims in that case. *Id.* at 20-21.

In *eToll*, the plaintiff had developed a product called "e-mail 97," which the defendant contracted to market and advertise. In its complaint, the plaintiff alleged that the defendant charged for services not rendered, inflated charges instead of billing at cost, did not disclose cheaper alternatives, etc. The court found that "all of these alleged acts of fraud arose in the course of the parties' contractual relationship," and the "fraud claims [were] inextricably intertwined with the contract claims." *Id.* at 21.

i. Count II – Equitable Subrogation

Defendants contend that Count II "lie[s] from the breach of duties imposed as a matter of social policy, while [Count I] lie[s] for the breach of duties imposed by mutual contract" (Doc. 10 at 5). However, Defendants fail to address specifically why they believe the Equitable Subrogation claim is so intertwined with the Breach of Contract claim so as to preclude it. In turn, Plaintiff argues that Equitable Subrogation is not precluded by the "gist of the action" doctrine because of the duties arising independently out of a principal/agent relationship and that this count "is based in the allegation that Defendants failed to provide requested coverages to Settlers Inn, Ltd. and lied to Settlers Inn, Ltd. that they did. This is a breach of the professional responsibilities owed by an insurance broker" (Doc. 12 at 12-13). The court disagrees with both parties' contentions.

---

[4] *Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F. Supp. 2d 329 (E.D. Pa. 2003) (distinguishing "fraud in the inducement" claims, which would not be barred by the doctrine (unless the contract at issue is fully integrated) and "fraud in the performance" claims, which would be barred).

A party's right of subrogation can be founded in contract or equity. *F.B. Washburn Candy Corp. v. Fireman's Fund*, 541 A.2d 771, 774 (Pa. Super. Ct. 1988) (citing *Allstate Insurance Co. v. Clarke*, 527 A.2d 1021, 1024 (Pa. Super. Ct. 1987). A number of Pennsylvania Superior courts and federal district courts have applied the doctrine of equitable subrogation to cases arising under Pennsylvania law and the Third Circuit has adopted their application.

> Equitable subrogation is a legal construct, employed by courts when one person, acting involuntarily or under some obligation, pays the debt of another. The rule is designed to facilitate the placement of the burden of debt on the party who should bear it. And whether in contract or equity, subrogation "is to be regarded as based upon and governed by equitable principles." An insurer, . . ., upon discharging an insured's liability, can become equitably subrogated and may assert its insured's claims against third parties, including a primary insurer.

(*Greater New York Mut. Ins. Co. v. North River Ins. Co.*, 85 F.3d 1088, 1095 (3d Cir. 1996) (internal citations omitted)).

In this case, Plaintiff's allegations present the Equitable Subrogation claim as based on its contract (the Producer's Agreement) with the defendants. Plaintiff alleges that AM Skier committed United to provide insurance to Settlers Inn, Ltd.; that this insurance included coverage that was deemed an "unacceptable risk" under United's Underwriting Requirements and thus barred under the Producer's Agreement; that Defendants possessed this Underwriting Agreement; and that Plaintiff therefore paid $122,500.00 on behalf of Settlors Inn, Ltd. to satisfy Hussey, the claimant.

Therefore, because United satisfied the insured's liability, it can now assert a contract claim against AM Skier on the allegation that the defendants offered an insurance policy in violation of their Producer's Agreement with United, as a consequence of which Plaintiff sustained damages.[5] The motion to dismiss Count II on the basis of the "gist of the action" doctrine will be denied.

ii. Count III

As with Count II, Defendants contend that Count III "lie[s] from the breach of duties imposed as a matter of social policy, while [Count I] lie[s] for the breach of duties imposed by mutual contract" and Plaintiff counters that the principal/agent relationship removes this claim from the contractual sphere. The court disagrees with Plaintiff's assertions.

Count I of Plaintiff's Complaint, claiming Breach of Contract, alleges that Defendants failed to follow the Underwriting Guidelines provided to them by United and instead issued Settlers Inn, Ltd. a policy containing coverage not approved by Plaintiff (¶ 30). This claim is made possible by Article II of the Producer's Agreement which states that "[AM Skier] [has] no authority to, and agree[s] that [it] will not submit to [United] any application for insurance . . . for any class of risk not specified in the Underwriting Requirements." Count III of Plaintiff's Complaint alleges that Defendants' fraud arose out of their intentional misrepresentations to Settlers Inn, Ltd. regarding the level of coverage provided and that these misrepresentations bound United to provide coverage that it never intended to issue

---

[5] Because the court finds that there is a plausible contract claim here, it will not address Plaintiff's arguments regarding the effect of a principal/agent relationship that may be an issue under a tort action claim.

(¶ 43). Plaintiff asserts that the fraud was further perpetrated by Defendants acting as advocates for Hussey (*Id.* at 45).

Here, Plaintiff's claim for Fraud arises out of the same Article II provision of the Producer's Agreement as the claim for Breach of Contract. Absent Article II, Defendants could have submitted an application for insurance that was outside a class of risk specified in the Underwriting Requirements. Consequently, the tort and contract counts are closely intertwined, the duties breached were created and grounded in the contract itself, and this claim is precluded by the "gist of the action" doctrine. The motion to dismiss Count III on the basis of the "gist of the action" doctrine will be granted.

### C. Economic Loss Doctrine

"'The Economic Loss Doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage'" and is "'concerned with two main factors: foreseeability and limitation of liability.'" *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008) (quoting *Adams v. Copper Beach Townhome Communities, L.P.*, 816 A.2d 301, 305, 307 (Pa. Super. Ct. 2003)).

The court has construed Count II as a claim that can permissibly be brought as a contract claim and has determined that it is brought as such. To this extent, the Economic Loss Doctrine has no application to this Count. As Count III has already been dismissed, it is unnecessary to determine whether the Fraud claim would be barred under the Economic

11

Loss Doctrine.  Consequently, Defendants' motion to dismiss Counts II and/or III on the basis of the Economic Loss doctrine will be denied.

## V. Conclusion

For the foregoing reasons, the court will grant in part and deny in part Defendants' motion to dismiss. The court will deny Defendants' motion to dismiss Count II (Plaintiff's Equitable Subrogation claim).  Count III (Plaintiff's Fraud claim) will be dismissed with prejudice.   A separate Order follows.

Robert D. Mariani
United States District Judge