# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED FINANCIAL CASUALTY
COMPANY,                                :

                                        :          CIVIL ACTION NO. **3:CV-13-1291**

                                        :

                 Plaintiff              :          Magistrate Judge Blewitt

                                        :

        v.                              :

                                        :

A.M. SKIER AGENCY, INC., *et al.*,      :

                                        :

                 Defendants             :

## MEMORANDUM AND ORDER

**I.    Background.**

On May 9, 2013, Plaintiff, United Financial Casualty Company ("United"), filed a Complaint against original Defendants, A.M. Skier Agency, Inc. (referred to herein as "AM Skier"), AMSkier Partners, Inc., and Kimberly Latsch, an employee of AM Skier. (Doc. 1). This case arises out of an insurance Producer Agreement (the "Agreement") between Plaintiff and A.M. Skier Agency, Inc. Pursuant to the Agreement, Defendant AM Skier was authorized to provide insurance products for Plaintiff. The Agreement was attached to Plaintiff's Complaint as Exhibit 1. (Doc. 1-1).

This Court's jurisdiction over this case is based on diversity.[1]  *See* 28 U.S.C. §1332.

Plaintiff's Complaint centers around "a breach of the Agreement in relation to a loss paid under a policy underwritten by Defendants that is alleged to not be in conformance with the underwriting guidelines of the Agreement."  (Doc. 24, p. 1, ¶ 2).  Plaintiff alleges that under the

---

[1]We note that Pennsylvania law applies to Plaintiff's claims as against Defendants and to AM Skier's Counterclaim against Plaintiff. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Schlegel v. Wilson-Cook Medical, Inc.*, 2007 WL 465528, * 3 n. 3  (M.D. Pa.).

Agreement, Defendant AM Skier was not authorized to submit to Plaintiff any insurance application "for any class of risk not specified in the Underwriting Requirements." Further, Plaintiff avers that the "Underwriting Requirements, which Defendant[] possessed, delineated 'unacceptable risks for hired auto-coverage and employer's non-owned liability coverage under a commercial auto policy,' including 'restaurant/pizza/fast-food delivery.'"

Plaintiff also alleges that Defendant Latsch improperly, and without its knowledge, annually provided a commercial insurance policy from May 25, 2007, through May 25, 2011, to Settlers Inn, Ltd. ("Settlers Inn"), and that Settlers Inn was within the prohibited category of "restaurant/pizza/fast-food delivery" business pursuant to the Underwriting Requirements. Plaintiff avers that Defendant Latsch incorrectly represented to Settlers Inn that its policy had hired auto-coverage and employer's non-owned liability coverage. Plaintiff then avers that on May 11, 2011, Colleen Stevens, an employee of Settlers Inn, during her scope employment, was involved in a motor vehicle accident with Joseph Hussey in Wayne County, PA. Since Defendants represented to Plaintiff that the policies they issued to Settlers Inn had hired auto-coverage and employer's non-owned liability coverage, Plaintiff settled Hussey's claims against Settlers Inn and Stevens for $122,500.00. Plaintiff also states that it incurred attorney's fees and costs in the amount of $21,128.00 related to Hussey's claim.

Additionally, Plaintiff alleges that the Agreement it had with AM Skier had an Indemnification Clause in Article X(B), which provided that AM Skier would indemnify, defend, and hold Plaintiff harmless for all losses that Plaintiff sustained due to AM Skier's negligence, wrongful acts, errors or omissions, or due to AM Skier's failure to comply with the provisions of the Agreement or the

Underwriting Requirements.  Pursuant to this Indemnification Clause, Plaintiff tendered a demand for indemnity related to Hussey's claim and Defendants refused to pay Plaintiff. (See Doc. 17, pp. 2-3, citing ¶'s 10-33 of the Complaint, Doc. 1).[2]

On June 25, 2013, Defendants jointly filed a Motion to Dismiss Plaintiff 's Complaint.  (Doc. 9).  On March 5, 2014, the Court granted, in part, and denied, in part, Defendants' Motion.  (Docs. 17 & 18).  Specifically, the Court denied Defendants' Motion to Dismiss Count II of Plaintiff's Complaint (Plaintiff's Equitable Subrogation claim), and the Court granted Defendants' Motion with respect to Count III (Plaintiff's Fraud claim) on the basis of the "gist of the action" doctrine and dismissed this claim with prejudice.   Thus, Plaintiff is now proceeding on its Count I (Breach of Contract claim), and Count II (Equitable Subrogation claim).

On March 18, 2014, Defendants filed their Answer to the remaining Counts of Plaintiff 's Complaint with Affirmative Defenses, and Defendant/Counterclaim Plaintiff AM Skier filed a Counterclaim against Plaintiff/Counterclaim Defendant United.  (Doc. 21 & Doc. 21, ¶'s 51-56, respectively).[3]

In ¶ 48 of Defendants' Affirmative Defenses, Defendants aver as follows:

> 48. The Defendant , A.M. Skier Agency, Inc., and its employees complied with the Underwriting Requirements for commercial auto polices; and the

---

[2]Since the Court detailed the factual allegations of Plaintiff's Complaint against Defendants in its March 5, 2014 Memorandum, we largely repeat these allegations from the stated Memorandum.  (Doc. 17, pp.  2-3).

[3]For present purposes, we simply refer to Defendant/Counterclaim Plaintiff A.M. Skier Agency, Inc., as "Defendant AM Skier" and Plaintiff/Counterclaim Defendant United as "Plaintiff United."

3

coverage under the commercial auto policy was properly submitted [to Plaintiff United] since the coverage definitions defining unacceptable business use of the risk type known as restaurant/pizza/fast food delivery did not and does not become "unacceptable under the facts of the <u>Hussey</u> claim; rather, the subject insured's driver, Colleen Stevens, operating on behalf of the Settlers Inn, was delivering to another restaurant of the insured Settlers Inn; to wit, the Cocoon, and not driving as deliver to <u>customers</u> and thus no violation occurred here.   Further, at the time of the policy application hereunder, the Cocoon did not even exist.   Therefore, the application was proper and/or within underwriting guidelines and/or within the past practices, custom or trade in the industry.

(Doc. 21, ¶ 48).

In its Counterclaim against Plaintiff United, Defendant AM Skier essentially avers as follows: that AM Skier and Plaintiff United are each bound by Article X of the Agreement, titled "Indemnification;" AM Skier suffered losses as set forth under Article X(A), including expenses and attorney's fees **as a result of the filing of this action by Plaintiff**; AM Skier's losses are substantial and will be sustained due to Plaintiff's wrongful acts, errors, and/or omissions, and due to Plaintiff's failure to comply with the provisions of the Agreement and/or the Underwriting Requirements; and the breach by Plaintiff of under Article X(A) of the Agreement caused AM Skier's losses.  (See Doc. 21, ¶'s 51-56)(emphasis added).

Thus, AM Skier asserts a Counterclaim for contractual indemnification against Plaintiff United under Article X of the Agreement.

On March 31, 2014, Plaintiff filed a Motion to Dismiss the Counterclaim of Defendant AM Skier under Fed.R.Civ.P. 12(b)(6).  **(Doc. 24).**  Plaintiff also filed its support brief.  (Doc. 25).  On April 10 and 11, 2014, Defendant AM Skier filed its Answer to Plaintiff 's Motion and its opposition brief.  (Docs. 26 & 27, respectively).  Plaintiff then filed its reply brief on April 15, 2014.  (Doc. 28).

4

Plaintiff United's Motion to Dismiss the Counterclaim of Defendant AM Skier is ripe for review. The parties consented to proceed before the undersigned Magistrate Judge for all matters, including trial, pursuant to 28 U.S.C. §636(c). (Doc. 30).

## II.    Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*,712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal*, 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny]*, 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct.

at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly*, 550 U.S. at 555) (not precedential).

Where the parties submit exhibits with their filings, a court must determine what documents may be considered with a motion to dismiss. In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." ( *Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." FN11 *Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guarantee Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

See also *Williams v. Hull*, 2009 WL 1586832, *2-*3 (W.D. Pa. 2009).

## III.   Discussion.

In its Complaint against Defendants AM Skier, Plaintiff United is attempting to pursue its indemnification and defense rights under the Agreement.[4]  In its Counterclaim against Plaintiff United, Defendant AM Skier is seeking to recover, under Article X(A) of the Agreement, any losses it incurs, including expenses and attorney's fees,  as a result of the filing of the instant law suit by Plaintiff.  In its Motion to Dismiss Defendant AM Skier's Counterclaim based on contractual indemnification, Plaintiff United argues that the Indemnification language of the Agreement, namely, Article X(A), upon which Defendant AM Skier relies, does not require Plaintiff United to indemnify Defendant AM Skier for damages it has or will sustain as a result of the instant law suit filed by Plaintiff United. We agree with Plaintiff United.

In *Amco Ins. Co. v. Varish Const., Inc.*, 2010 WL 3239395, *2-*3 (M.D. Pa. 7-15-10), the Court stated:

> "Indemnification is 'a fault shifting mechanism.' " *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 174 (3d Cir.2008) (quoting *Sirianni v. Nugent Bros., Inc.*, 509 Pa. 564, 506 A.2d 868, 871 (Pa.1986)). Indemnity " 'shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead.' " *Walton, supra*, 610 A.2d at 460(quoting W. Prosser, *Law of Torts* at 310 (4th ed.1979)).
> Indemnity may be based either on a contractual provision or on the common law right of indemnification.

In the present case, as stated, indemnity is  based on a contractual provision.  Article X(A) of the Agreement, titled "Indemnification" contains the following Indemnification provision:

---

[4]As stated above, Plaintiff United attached a copy of the  Agreement to its Complaint and we shall consider it for purposes of the instant Motion to Dismiss. (Doc. 1-1).

Article X.  Indemnification

A.   We will indemnify, defend, and hold you harmless for and from all liabilities, losses, damages, judgments, actions, and expenses, including reasonable attorneys' fees (collectively, "Losses"), that you sustain due to our negligence, any wrongful acts, errors or omissions on our part, or failure to comply with the provisions of this Agreement or our Underwriting Requirements.  This Indemnification shall include, without limitation, any Losses that you sustain due to our use of consumer credit information if you have complied with our procedures for use or ordering of the same.  You agree to immediately notify us when you learn of or receive any claim that you feel is covered under this Article.  We shall have the right to participate, at our expense, in the investigation and defense of any such claim, and may, at our option, assume full defense of any action filed.  If we assume the defense, we will not be liable to you for any cost of litigation, including, without limitation, court costs and attorneys' fees, that you incur subsequent to our decision to assume defense of any such action.

Article X(B) of the Agreement contains the following provision:

B.  You will indemnify, defend, and hold us harmless for and from all Losses that we sustain due to your negligence, any wrongful acts, errors or omissions on your part, or failure to comply with the provisions of this Agreement or our Underwriting Requirements.  We agree to immediately notify you when we learn of or receive any claim that we feel is covered under this Article.  You shall have the right to participate, at your expense, in the investigation and defense of any such claim.

(Doc. 1-1, p. 6).

As Plaintiff United points out in its instant Motion, "[t]he clear language of [Article X(A)] of the Agreement is intended to provide A.M. Skier Agency, Inc. indemnity and to hold it harmless from claims of third parties to the Agreement who claim losses against A.M. Skier Agency, Inc. as a result of negligence [or] other wrong doing by Plaintiff, not a claim for breach of contract or equitable subrogation as brought by Plaintiff in this matter."  (Doc. 24, p. 4, ¶ 11).

As noted above, because this is a case based upon diversity jurisdiction of this Court, 28

U.S.C. § 1332, we apply Pennsylvania law. *See Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 561, 563 (3d Cir. 2003). Indeed, the parties do not dispute that Pennsylvania substantive law applies to the interpretation of the terms of the Agreement. Thus, the Court must look to Pennsylvania law on the interpretation of indemnification contracts.

In *McCloskey v. Novastar Mortg., Inc.*, 2007 WL 2407103, *5 (E.D. Pa. 8-21-07), the Court stated that an enforceable contract exists under Pennsylvania law if:

> (1) the parties have manifested an intent to be bound by the agreement's terms; (2) the terms are sufficiently definite; and (3) there was consideration. *In re Estate of Hall,* 731 A.2d 617, 621 (Pa.Super.Ct.1999). *See also Mazzella v. Koken,* 559 Pa. 216, 739 A.2d 531, 536-37 (Pa.1999) (noting that in order to enforce an agreement " 'the minds of the parties should meet upon all the terms, as well as the subject-matter, of the [agreement].' " (citation omitted)).

"The important inquiry is whether the parties 'manifested an intention to be bound by [a document's] terms and whether the terms are sufficiently definite to be specifically enforced." *ATACS Corp. v. Trans World Commc'ns., Inc.,* 155 F.3d 659, 665 (3d Cir.1998).'"*WP 851 Associates, L.P. v. Wachovia Bank, N.A.,* 2008 WL 114992, *3  (E.D. Pa.2008). *See also See also Ware v. Rodale, Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003); *Gundlach v. Reinsrien*, 924 F.Supp. 684, 688 (E.D. Pa. 1996).

In construing a contract to determine if it is ambiguous under Pennsylvania law, the court looks to the four corners of the document. *See Glenn Distribs. Corp. v. Carlisle Plastics, Inc.,* 297 F. 3d 294, 300 (3d Cir. 2002).

In *Benchmark Group, Inc. v. Penn Tank Lines, Inc.,* 612 F. Supp. 2d 562, 574 (E.D. Pa. 2009), the Court stated:

9

"[t]he task of interpreting a contract is generally performed by a court, rather than by a jury.... [t]he goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983) (internal citations omitted). "The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986). Thus, "a contract that is unambiguous on its face must be interpreted according to the natural meaning of its terms, unless the contract contains a latent ambiguity, whereupon extrinsic evidence may be admitted to establish the correct interpretation." *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 96 (3d Cir.2001).

We find that the terms of the Indemnification provision in the Agreement, quoted above, are not ambiguous. Based on our review of Article X(A) and (B) of the Agreement between Plaintiff United and Defendant AM Skier governing Indemnification, and in ascertaining the intent of the parties from the document itself since the terms are clear and unambiguous, we agree entirely with Plaintiff United that "when construed together, it is clear that these are cross indemnification provisions between the parties intended to be applicable to claims brought by third parties to the contract and not for claims between parties to the contract." (Doc. 24, p. 5, ¶ 15).

In its Counterclaim, Defendant AM Skier alleges that Plaintiff United breached the Agreement by filing the instant law suit and consequently, it [AM Skier] has suffered damages, including attorneys' fees and the costs of defending the instant case. We concur with Plaintiff United that, based on Article X(A) and (B) of the Agreement, which provisions are clear and unambiguous, "[t]he filing of the present law suit [by Plaintiff United] does not meet any of the above terms under which AM Skier would be entitled to contractual indemnification." (Doc. 28, p. 3). We also concur with Plaintiff that "construing [Article X(A) of the Agreement] to require

Plaintiff to hold Defendant [AM Skier] harmless from a contractual or equitable subrogation claim brought by Plaintiff [in the instant case] would defy logic and is certainly not within the reasonable intentions of the parties." (Doc. 24, p. 5, ¶ 18).

## IV.   Conclusion.

Thus, we will grant Plaintiff United's Motion to Dismiss Defendant AM Skier's Counterclaim. Based on the foregoing, we find it would be futile and prejudicial to Plaintiff United to grant Defendant AM Skier leave to amend its Counterclaim against Plaintiff. As such, we shall dismiss Defendant AM Skier's Counterclaim against Plaintiff United with prejudice. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir.2008(("If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.")(citation omitted).

An appropriate Order will be issued.


**THOMAS M. BLEWITT**
**United States Magistrate Judge**


Dated: April 24, 2014

11